**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **TRACY L. NORTHINGTON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| **v.** ) | |
| ) | |
| ) | **CASE NO. CIV-12-1402-W** |
| **CAROLYN W. COLVIN,** ) | |
| **ACTING COMMISSIONER SOCIAL** ) | |
| **SECURITY ADMINISTRATION,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Defendant Commissioner's final decision denying Plaintiff's applications for social security and disability income benefits (SSI, DIB) under the Social Security Act. United States District Judge Lee R. West has referred this matter for proceedings consistent with 28 U.S.C. § 636(b)(3), and it is now before the undersigned Magistrate Judge. Upon review of the pleadings, the transcript of administrative proceedings (Tr.) and the parties' briefs, the undersigned recommends that the Commissioner's decision be **AFFIRMED**.

## I. PROCEDURAL HISTORY

This is Ms. Northington's second appeal from the denial of disability benefits. In a previous appeal, the parties consented to have the issues determined by then-United States Magistrate Judge Robert E. Bacharach.[1] In his decision, Judge Bacharach

---

[1] Judge Bacharach now sits on the Tenth Circuit Court of Appeals.

reversed and remanded the case because the ALJ failed to discuss the opinions of two physical therapists; Plaintiff had attended physical therapy with a diagnosis of cervical pain following a neck injury. Tr. 279. The physical therapists authored a functional capacity evaluation concerning Plaintiff's physical abilities and limitations. Tr. 279–81. In the report, the therapists stated that Plaintiff could occasionally lift ten pounds; could frequently lift negligible weight; was unable to perform "axial rotation" reaching, "crouching/squatting" reaching, and "stooping" reaching; could perform "overhead" reaching and "kneeling" reaching on a "less than occasional" basis; could occasionally stand, sit, walk, and climb stairs; and was unable to complete a treadmill test due to complaints of neck pain. Tr. 279–80.

Judge Bacharach found that although the physical therapists are not considered "acceptable medical source(s)" under 20 C.F.R. §§ 404.1513(a), 416.913(a), and thus their opinions could not be used to establish a medically determinable impairment at step two, that the ALJ had a duty to consider the opinions based on the following factors: the length of time the therapists had known the claimant; the frequency in which the therapists had seen the claimant; the consistency of the opinions with other evidence; the supportability of the opinions; the quality of the therapists' explanation for their opinions; the possible speculation of the therapists related to the claimant's impairment; and the existence of other factors which would tend to support or refute the opinions. Tr. 383.

Judge Bacharach also noted that Social Security Ruling 06–03p generally requires the administrative law judge to explain the weight given to opinions by "other sources" "or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." Tr. 384. Accordingly, the matter was remanded to the ALJ for consideration of the physical therapists' opinions under the above-noted standards.

## II. ADMINSTRATIVE PROCEEDINGS ON REMAND

On remand, the ALJ conducted a hearing on February 9, 2012. Tr. 327. On August 29, 2012, the ALJ issued another decision finding that plaintiff was not entitled to benefits. Tr. 327-338. In reaching this finding, the ALJ followed the sequential evaluation process for determining whether an individual is disabled. 20 C.F.R. § 404.1520(a) and 416.920 (a)). At step one, the ALJ found that, Plaintiff met the insured status requirements of the Social Security Act through March 31, 2013; and that Plaintiff had not engaged in substantial gainful activity since December 27, 2006. At step two, the ALJ found that Plaintiff has the following severe impairments: obesity, cervical disc bulges, lumbar retrolisthesis, obstructive sleep apnea, and diabetes. Tr. 329. The ALJ found plaintiff's mental impairments to be nonsevere. Tr. 333-34. The ALJ also found that Plaintiff's alleged lupus was not a medically determinable impairment. Tr. 334. The ALJ found that Plaintiff did not have an impairment or combination of impairments meeting or medically equaling the severity of one of the listed impairments

in 20 C.F.R. part 404, subpart P, Appendix 1. At step four, the ALJ found that Plaintiff

has the residual functional capacity (RFC) to perform light work is defined in 20 C.F.R.

404.1567(a) as follows: "occasionally lift/carry/push/pull 10 pounds frequently and 20

pounds occasionally; occasionally climb stairs, crouch, and stoop; occasionally perform

overhead reaching; avoid hazards including unprotected heights; avoid concentrated

exposure to extreme cold and industrial vibration." Tr. 334. Based upon this RFC, the

ALJ found that Plaintiff is unable to perform any of her past relevant work. However,

considering the Plaintiff's age, education, work experience, and RFC, the ALJ found that

Plaintiff had acquired work skills from past relevant work that are transferable to other

occupations with jobs existing in significant numbers in the national economy. Tr. 336.

The ALJ relied on the testimony of a vocational expert and used the medical-

vocational guidelines as a framework for her decision. The vocational expert testified

that a person with Plaintiff's RFC, skills, and vocational characteristics could perform

jobs such as dietary clerk, restaurant hostess, pie maker, and salad maker. Tr. 337.

Accordingly, the ALJ found that the Plaintiff was not disabled and not entitled to

benefits.

### III. STANDARD OF REVIEW

The Social Security Act defines "disability" as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. §

423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(b)-(f); *see also Williams v. Bowen,* 844 F.2d 748, 750–52 (10th Cir. 1988) (describing five steps in detail). Under this sequential procedure, Plaintiff bears the initial burden of proving she has one or more severe impairments. *See* 20 C.F.R. § 404.1512; *Turner v. Heckler,* 754 F.2d 326, 328 (10th Cir. 1985). If she carries that burden, the ALJ will conduct a RFC assessment at step four to determine what if anything the claimant can still do despite his impairments. *See* 20 C.F.R. § 404.1545(e); *Andre v. Sec'y of Health & Human Servs.,* 985 F.2d 1045, 1048 (10th Cir. 1993). At the conclusion of step four, Plaintiff once again carries the burden and must show an inability to return to past relevant work. *See* 20 C.F.R. § 404.1520(e); *Potter v. Sec'y of Health & Human Servs.,* 905 F.2d 1346, 1349 (10th Cir. 1990). If Plaintiff meets this burden, the Commissioner bears the burden of showing that a claimant is able to make an adjustment to other work by providing evidence about the existence of work in the national economy given a claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1512(f).

This Court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's "factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue,* 602 F .3d 1136, 1140 (10th Cir. 2010). To that end, reversal is necessary if the ALJ failed "'to provide this court with a sufficient basis to determine that appropriate

legal principles have been followed.'" *Byron v. Heckler,* 742 F.2d 1232, 1235 (10th Cir. 1984) (citations omitted).

## IV. PLAINTIFF'S CLAIMS OF ERROR

Plaintiff raises three points of error. First, she claims that the ALJ again committed reversible legal error by failing to properly evaluate the opinion of the physical therapists. Second, Plaintiff contends that the ALJ erred as a matter of law by failing to properly evaluate Dr. Hisey's opinion regarding her lifting capacity. Third, and finally, Plaintiff alleges that the ALJ's RFC determination was legally flawed and not supported by substantial evidence.

### A. The Opinion of the Physical Therapists

In her first claim of error, Plaintiff contends that the Social Security Administration has recognized the increasing role of individuals other than doctors in medical treatment and evaluation. To that end, Plaintiff notes Social Security Ruling 06-3p, which sets forth the factors to be used by the Commission when considering opinions from non-acceptable medical sources, otherwise known as "other sources." Plaintiff argues that SSR 06-3p requires an ALJ to explain the weight given to opinions from other sources when those sources may have an effect on the outcome of the case; in that way, a subsequent reviewer can follow the ALJ's reasoning. Plaintiff's Opening Brief, 18-19. She also argues that SSR 06-3p states that "other source" evidence may outweigh acceptable medical source opinions in certain situations.

Plaintiff argues that her physical therapists opined in November 2007 that she could lift up to 10 pounds occasionally and negligible weight frequently and constantly. Plaintiff's Opening Brief, 19. According to Plaintiff, they further concluded that she could push 20 pounds and pull 25 pounds, grip 22 pounds on the right and 7 pounds on the left, and carry for 30 feet 10 pounds occasionally and 3 pounds frequently. *Id.* at 19. According to Plaintiff, the physical therapists' functional capacity evaluation (FCE) also revealed that she could not perform floor to knuckle or floor to shoulder lifting, axial rotation reaching, crouching/squatting reaching, or stooping reaching. Plaintiff's Opening Brief, 20. Finally, Plaintiff notes the physical therapists' finding that she could do less than occasional kneeling reaching and overhead reaching from 45 to 69°, and can perform only occasional standing, walking, sitting, and stair climbing.[2]

According to Plaintiff, the ALJ recited the various relevant factors used to evaluate "other source" opinions, but gave the physical therapists' FCE "little weight" because the retained medical expert, Dr. Raulston, disagreed with the evaluation based upon Plaintiff's purported lack of effort during testing. Plaintiff's Opening Brief, 20. Plaintiff argues that the opinion of Dr. Raulston, who never examined plaintiff, is not sufficient to refute the validity of the physical therapists' functional capacity evaluation. *Id.* Furthermore, Plaintiff argues that although the ALJ stated that she considered the

---

[2] The physical therapists also found that functional mobility and EPIC lifting testing could not be completed due to neck pain, that Plaintiff could not perform any floor to knuckle or floor to shoulder lifting, and that her cervical mobility was severely restricted ranging from only 15 to 53% in various planes of movement. Plaintiff's Opening Brief, 22 (citing 279-80, 329-36).

relevant factors, she provided virtually no analysis beyond reciting Dr. Raulston's testimony. *Id.*

Plaintiff also contends that other record evidence supported the physical therapists opinions. She cites the ALJ's acknowledgment that Plaintiff exhibited generalized spinal muscle spasms, significantly reduced mobility and weakness throughout the spine and in both shoulders, diminished cervical and lumbar dermatome sensation, diminished left grip strength, positive cervical orthopedic tests, thoracic trigger points and radicular pain, and positive straight leg raise testing bilaterally during Dr. Swami's and Dr. Blough's examinations. Plaintiff's Opening Brief, 22.

Finally, Plaintiff claims that significant evidence was not discussed by the ALJ. For example, she notes that the state agency employee taking her application observed that it was very hard for her to sit down and stand up due to her back and neck injury, that she walked "very very" slowly, and when writing her name could hardly hold the pen in her hand because her hand was so swollen. Plaintiff's Opening Brief, 22. She also notes the February 2007 findings by Dr. Swami, May 2007 findings by Dr. Hisey, September 2008 physical therapy findings by Ms. Clem, and July 2011 findings by Dr. Russell. Plaintiff's Opening Brief, 23. Finally, Plaintiff argues that the ALJ apparently disregarded the fact that the physical therapists "specialized" in performing functional capacity evaluations. *Id.*

The Commissioner responds that Plaintiff's arguments misapply the standard of review, and overlook the exceptionally broad latitude afforded to an ALJ's consideration

of so-called "other source" opinion evidence. Commissioner's Brief, 4-5. The Commissioner argues that the ALJ plainly considered the FCE, and offered an explanation, grounded in the evidence, for according it little weight. (Tr. 332-333).

The undersigned is persuaded that the ALJ complied with the requirement that she consider the FCE prepared by the physical therapists. Although Plaintiff is correct that the Social Security Administration has acknowledged that an increasing number of claimants are receiving treatment from medical sources who are not considered to be acceptable medical sources under its rules, SSR 06–03p, 2006 WL 2329939, at *3, the agency states:

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what the adjudicator must consider and what the adjudicator must explain in the disability determination or decision, *the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning,* when such opinions may have an effect on the outcome of the case.

*Id.* at *6.

Thus, under SSR 06–3p the ALJ was not entitled to ignore the opinion of the physical therapists who prepared the FCE, where, as here, the ALJ indicates she has considered all the evidence, the court takes the ALJ at his word. *Wall v. Astrue,* 561 F.3d 1048, 1070 (10th Cir. 2009). In this case, there is every reason to abide by that

well-established principle. In its entirety, the ALJ's discussion of the FCE and other evidence demonstrates that she adequately considered the opinion in question.

As noted by both Plaintiff and the Commissioner, the ALJ correctly set forth the factors to be considered when determining the weight to be accorded to such "other source" evidence. It is also clear that the reason for the ALJ's decision to give the opinion little weight was due to the Plaintiff's lack of effort during the evaluation. Tr. 333. In considering this factor, the ALJ relied on the testimony of the retained medical expert who also opined that the results were questionable due to problems with its reliability. *Id.* Dr. Raulston testified that the FCE results were suspect because the report itself mentioned one instance of self-limiting behavior and Plaintiff's blood pressure and heart rate results pre- and post-testing suggested a lack of exertional effort. Tr. 356. Dr. Raulston acknowledged that the physical therapists thought the test was indeed reliable, so he was not unaware of that opinion; he simply disagreed with it. The ALJ referred elsewhere in the decision to the opinion of S.S. Swami, M.D., a consultative examiner, who stated that Plaintiff did not engage in full effort on some of his range-of-motion testing. Tr. 331. The ALJ gave Dr. Swami's opinion great weight *Id.*

Plaintiff also offers additional evidence in the record that might have supported giving greater weight to the FCE. Plaintiff's Opening Brief, 22-23. Plaintiff seeks to impose a more stringent standard of review than is required for the evaluation of "other source" evidence. The Commissioner was directed on remand to give consideration to the FCE evidence. Another hearing was conducted, the opinion of a retained medical

expert was sought on that issue, and the reason for the weight assigned appears in the decision. Accordingly, Plaintiff's first claim of error should be rejected.

## B. Evaluation of Dr. Hisey's Opinion Regarding Lifting Capacity

In her second claim of error, Plaintiff contends that ALJ failed to provide legitimate reasons for discounting Dr. Hisey's opinion regarding Ms. Northington's ten-pound lifting capacity, or to properly evaluate that opinion under the relevant factors. Plaintiff refers to Dr. Hisey's November 2007 report in which he noted the FCE discussed above, stating that she was capable of lifting up to 10 pounds, pushing up to 20 pounds, and pulling up to 25 pounds. Plaintiff's Opening Brief, Tr. 282. Although the ALJ stated that she gave these limitations "moderate weight" because "additional medical records do not substantiate the limitations on pushing/pulling. . . ," Tr. 331. Plaintiff argues that her basis for discounting Dr. Hisey's opinion was inadequate because the ALJ "not only disregarded a great deal of evidence," but "entirely failed to specify what records she believed did not support that opinion." Plaintiff's Opening Brief, 25.

She also argues that the ALJ never mentioned any findings consistent with Dr. Hisey's lifting capacity restriction. *Id.* at 26. For example, reduced mobility in the cervical, thoracic, and lumbar spine; hips; and both shoulders, Tr. 204, 229, 231-232, 244-245, 289, 294-295; cervical, thoracic, and lumbar muscle spasms and paraspinal muscle weakness, Tr. 204, 229, 232, 244-245, 266, 294; significant size differential, weakness, and muscle or dural tension in the upper and/or lower extremities, Tr. 232,

244-245, 266, 294; thoracic trigger points, shoulder crepitus, poor posture, and positive cervical and shoulder orthopedic tests, Tr. 244-245, 294; diminished upper and lower extremity reflexes, Tr. 232, 266, 294; decreased dermatome and extremity sensation, Tr. 244-245, 300;cervical disk bulging and lumbar retrolisthesis, Tr. 265, 304; and slow movement changing positions and exercising, Tr. 289, 291. Plaintiff's Opening Brief, 26-27.

The Commissioner responds that the ALJ offered a supportable reason for according moderate weight to that part of Dr. Hisey's opinion regarding impact of her impairments on her ability to function. Commissioner's Brief, 8. To the extent the ALJ's explanation was deficient, the Commissioner further argues that any error was harmless because the ALJ's other findings foreclose the possibility that she might have assigned more weight to Dr. Hisey's opinion, but for the error. *Id.* (citing *Fischer-Ross v. Barnhart*, 431 F.3d 729, 734 (10th Cir. 2005)). The Commissioner does note what she characterizes as a scrivener's error in the ALJ's statement regarding which limitation of Dr. Hisey's she found to be inconsistent with the medical evidence. Commissioner's Brief, 9-10. In particular, the ALJ stated that she found Dr. Hisey's limitations on pushing and pulling to be unsubstantiated by the medical record. *Id.* The Commissioner notes that Dr. Hisey's limitations on pushing and pulling are consistent with the RFC, and that the ALJ found Plaintiff only able to perform the lower end of the range of pushing and pulling identified by Dr. Hisey. Commissioner's Brief, 10 (Dr. Hisey opined

that Plaintiff could push/pull 20-25 pounds occasionally; the ALJ's RFC finding was that Plaintiff could push/pull 20 pounds occasionally).

The Commissioner concludes that the ALJ must have intended to find Dr. Hisey's lifting restriction (10 pounds) to be unsubstantiated by the medical record, as the ALJ found that Plaintiff could lift 20 pounds occasionally. Commissioner's Brief, 10.

The Commissioner also disagrees with Plaintiff's argument that the ALJ did not give a reason for only giving moderate weight to Dr. Hisey's opinion regarding the limitations resulting from Plaintiff's impairment. *Id.* The Commissioner points out that Dr. Hisey's lifting limitation was based upon her neck pain, and the ALJ noted that to be inconsistent with a September 2008 imaging report that found the cervical spine series to be unremarkable. *Id.* (citing 331, referring to imaging report contained in record at Tr. 303). The Commissioner also points out that Dr. Hisey's lifting limitation was directly linked to the FCE, to which the ALJ gave little weight. *Id.* at 11.

The undersigned finds the ALJ's treatment of Dr. Hisey's opinion to comply with the treating physician rule. The Tenth Circuit Court of Appeals has long recognized the proper analysis and legal standards for determining the weight to be given to the opinions of treating sources. When considering the opinion of an "acceptable medical source" such as Dr. Hisey, the ALJ must first determine whether the opinion should be given "controlling weight" on the matter to which it relates. *See Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003). The opinion of a treating physician must be given controlling weight if it is well supported by medically acceptable clinical or laboratory

diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Id.* (applying SSR 96–2p, 1996 WL 374188, at *2); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If the opinion is deficient in either of these respects, it should not be given controlling weight. Even if the opinion of a treating physician is not entitled to controlling weight, however, it is still entitled to deference. The ALJ must clearly state the weight the opinion is being given, even if it is being rejected. The ALJ must specify the reasons for the weight afforded the opinion, and his reasons must be closely tied to the factors specified in the regulations. *See Watkins,* 350 F.3d at 130001. Remand is required if the ALJ does not adequately support the weight he assigned to the opinion of an acceptable medical source. As the relevant ruling explains:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§§] 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96–2p, 1996 WL 374188, at *4. That an opinion is not given controlling weight does not resolve the second, distinct inquiry. *See Langley v. Barnhart,* 373 F.3d 1116, 1121 (10th Cir. 2004) (holding that while absence of objective testing provided basis for denying controlling weight to treating physician's opinion, "[t]he ALJ was not entitled, however, to completely reject [it] on this basis"). This second inquiry is governed by its

own set of factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Id.* at 1119 (quotation omitted). In applying these factors, the ALJ's findings must be "sufficiently specific to make clear to any subsequent reviewers the weight she gave to the treating source's medical opinion and the reason for that weight." *Id.* (quotation omitted). Although an ALJ should consider all of these factors, it is not necessary that she explicitly discuss every factor. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

The ALJ gave Dr. Hisey's opinion controlling weight with regard to establishing the existence of a medically determinable impairment, and the nature and severity of the impairment. Tr. 331. She did not give his opinion controlling weight as to one of the resultant limitations, but did give it "moderate weight." In explanation, the ALJ referred to a specific, objective test performed approximately a year after Dr. Hisey's 10 pound lifting limitation was imposed; the test found the condition of Plaintiff's cervical spine to be unremarkable. Tr. 303. Although she did not specifically discuss every factor, she did discuss the one she apparently found to be most important to her decision.

Her decision also contained references relevant to the weight assigned to Dr. Hisey's lifting limitation, such as: retained medical expert, Dr. Raulston, found Plaintiff able to lift 10 pounds frequently; assigning "little weight" to the FCE upon which Dr. Hisey based his opinion; noted conservative treatment at the Indian Health Clinic; noted the consultative examination report of Dr. Swami (which was accorded great weight) in which he opined Plaintiff was not giving full effort during ROM testing; and Plaintiff's failure to attend physical therapy on occasion or to reschedule missed appointments. Tr. 331-32.

As for the evidence that Plaintiff claims supports Dr. Hisey's lifting restriction, Plaintiff's Opening Brief, 26-27, the undersigned notes three things. First, the evidence is consistent with the controlling weight the ALJ gave to Dr. Hisey's opinion regarding nature and extent of Plaintiff's medically determinable impairment; none of it is inconsistent with the lifting restriction in particular (apart from the FCE discussed above, and weighed by the ALJ); and third, it was discussed by the ALJ in her opinion. As long as the proper legal standards are applied, the ALJ is the one who must weigh the evidence—not the reviewing court.

In light of the above, it is recommended that Plaintiff's second claim of error be rejected.[3]

---

[3] The undersigned agrees with the Commissioner that the ALJ obviously meant to refer to Dr. Hisey's limitations on *lifting* in explaining the weight accorded to his opinion; she did adopt his findings regarding limitations on pushing/pulling. *See* 331, 334. *See Poppa v. Astrue*, 569 F.3d 1167, 1172 n. 5 (10th Cir. 2009) (affirming despite scrivener's error).

**C. Whether the RFC is Legally Flawed and/or Not Supported by Substantial Evidence**

In her third argument, Plaintiff begins with her claim that the ALJ's RFC determination failed to specifically address Ms. Northington's capacities for standing, walking, and sitting as required by SSR 96-8p. Plaintiff's Opening Brief, 29 (citing Tr. 334 and SSR 96-8p, 1996 SSR LEXIS 5, at *19). She claims that even if those findings had been specifically included in the RFC finding, they would not have been supported by substantial evidence. *Id.* Plaintiff also claims that the ALJ improperly failed to include any limitations pertaining to cervical movement, reaching, and handling. Plaintiff's Opening Brief, 29-30. With respect to reaching and handling, Plaintiff claims that the ALJ largely disregarded evidence of hand swelling, upper extremity weakness, diminished upper extremity reflexes, unequal grip strength and upper arm size, arm and cervical dermatome numbness, dural tension in the right arm, and absent right upper extremity pulses. Plaintiff's Opening Brief, 30 (citing Tr. 131, 232, 244, 266, 279, 294, 300, 329-336). She claims that all of the jobs identified at step five involved both frequent reaching and handling. Plaintiff concludes that the ALJ failed to properly explain her RFC assessment, and omitted limitations that were "well supported" by the record.

The Commissioner first responds that the Tenth Circuit has found expression of the RFC in terms of the broad, exertional categories to be proper at step five. Commissioner's Brief, 13. (citing *Fergueson v. Barnhart*, 52 F. App'x 112, 114-15 (10th Cir. 2002)). Furthermore, the Commissioner notes that the ALJ relied on Dr. Raulston's

opinion that Plaintiff could stand and walk for six hours in an eight-hour workday. *Id.* (citing Tr. 330, 336). The Commissioner also contends that the ALJ obviously understood the exertional requirements of light work, as she cited the regulations defining light work in her decision. *Id.* (citing Tr. 334), The Commissioner contends that this conclusion is bolstered by the ALJ's detailed description of her deviations from the basic requirements of light work in the RFC assessment. *Id.*

Plaintiff next posits that the ALJ should have included limitations pertaining to cervical movement, reaching, and handling in the RFC assessment. Plaintiff's Opening Brief, 29-30. The Commissioner argues that the ALJ did not commit error in declining to include any limitation in cervical range of motion because her finding in that regard is supported by substantial evidence. Commissioner's Brief, 14. The Commissioner cites the September 2008 medical imaging of Plaintiff's cervical spine that yielded normal results; Dr. Hisey's failure to include any cervical range-of-motion limitation; Dr. Swami's documented suspicion that Plaintiff was not giving full effort on cervical range-of-motion testing; and the opinions of Dr. Raulston and the state-agency experts, who did not see a need for any cervical limitations. Commissioner's Brief, 14.

With regard to Plaintiff's argument that the ALJ should have included additional reaching and handling limitations in her RFC finding, the Commissioner points out that the ALJ did limit Plaintiff to "occasional" overhead reaching due to her shoulder impairment. *Id.* at 15 (citing Tr. 334). In addition, the Commissioner contends that the ALJ's failure to include any manipulative limitations in her RFC is supported by

substantial evidence. *Id.* She notes that "not even Dr. Hisey postulated any manipulative limitations in his opinion letter, and that the one "possible performance-limiting behavior" cited by the FCE physical therapists was with regard to Plaintiff's ability to grip. Commissioner's Brief, 15 (citing Tr. 280).

The undersigned finds no error in the ALJ's expression of her RFC finding. As the Tenth Circuit recently noted:

> [T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record. We have thus rejected [the] argument that there must be specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category.

*Chapo v. Astrue*, 682 F.3d 1285, 1288-89 (10th Cir. 2012) (citations and quotations omitted).

The remainder of Plaintiff's argument that the ALJ's RFC was flawed is essentially based on her contention that it is not supported by substantial evidence. However, the evidence cited is the same evidence discussed above in connection with Plaintiff's argument that the ALJ did not properly consider the physical therapists' FCE, and failed to give good reasons for not adopting Dr. Hisey's lifting limitation. The undersigned has thoroughly reviewed the medical record—, which is also discussed at length in the ALJ's decision. The ALJ did include a limitation to only occasional overhead reaching, and discussed any medical evidence that would pertain to additional reaching, handling, and manipulative limitations. Her failure to include those limitations in her RFC finding is supported by substantial evidence. The undersigned finds Plaintiff's third claim of error

19

to be without merit, and in light of the above discussion recommends that the decision of the Commissioner be affirmed.

## RECOMMENDATION

Having reviewed the evidence of record, the transcript of the administrative hearing, the decision of the ALJ and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner should be **AFFIRMED.**

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. See 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such objections should be filed with the Clerk of the District Court by **February 28, 2014**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Casanova v. Ulibarri,* 595 F.3d 1120, 1123 (10th Cir. 2010).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

**ENTERED** on February 14, 2014.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE